**In re BURTON S.**

[Cite as *In re Burton S.* (1999), 136 Ohio App.3d 386.]

Court of Appeals of Ohio,
Sixth District, Ottawa County.

No. OT–99–027.

Decided Dec. 17, 1999.

*Spiros P. Cocoves,* for appellant.

*Mark Mulligan,* Ottawa County Prosecuting Attorney, and *Bruce Winters,* Assistant Prosecuting Attorney, for appellee.

SHERCK, Judge.

This appeal comes to us from a judgment of the Ottawa County Court of Common Pleas, Juvenile Division, in which appellant, Burton S., was adjudicated a delinquent child. Because we conclude that the trial court erred to the prejudice of appellant in admitting the results of polygraph examinations and then failing to consider that evidence, we reverse.

As a result of an incident that occurred on a school bus, a complaint was filed against appellant alleging that he committed acts which, if an adult, would constitute aggravated menacing, in violation of R.C. 2903.21. At the adjudicative hearing before a magistrate, several witnesses testified. Chad Miller, the bus driver, stated that when he reached the last stop on his route, appellant made comments to him after being told of a change in appellant's drop-off location. As appellant left the bus, a hostile exchange occurred between him and Miller. According to the driver, appellant angrily called him names and threatened to "kick [his] ass."

Miller testified that appellant's mother arrived in her pickup truck shortly after the bus arrived at the drop-off location. She parked in the parking lot, some seventy-five to one hundred feet away from the bus. Appellant then exited the bus, walked a few feet away, and continued yelling at him, daring Miller to fight since they were "not on school property." Miller testified that he repeatedly told appellant to get into his mother's vehicle. Miller further testified that appellant threatened to "kill him," and personally felt that appellant intended to seriously harm him. Ultimately, appellant turned and entered the truck. Miller stated that he was "amazed" because he had never seen appellant act this way before. When Miller went over to talk with appellant's mother, he was, however, unable to discuss the problem due to appellant's agitated state. Miller then returned to his bus. He reported the incident to his supervisor and eventually filed a police report.

At the close of the prosecution's case, appellant moved for dismissal, stating that the court lacked jurisdiction since the state had failed to put forth evidence of appellant's age. The magistrate granted appellant's motion. Pursuant to objections filed by the state, the juvenile court, nevertheless, reinstated the case, ruling that appellant's age was not an essential element of the crime alleged and that the trial court did not lose jurisdiction over the case simply by the failure to present evidence of appellant's age.

At a subsequent hearing, appellant's mother testified that she arrived at the drop-off point at approximately the same time as the bus and parked only fifteen feet away from the bus. She noticed that appellant and the driver were conversing before appellant left the bus. She testified that as appellant walked away from the bus, Miller came to the bus door and yelled at her son, "Just get in the truck." According to the mother, appellant then stopped approximately ten feet away from the bus, turned and said "Well, you can't make me. I'm not on school property." The driver again told appellant to get in the truck or he was going to have a problem. Miller then turned back to the bus and said he was going to call the Sheriff's Department. Appellant then allegedly said, "Fine. Go ahead."

According to appellant's mother, appellant then sat in the truck. Miller left the bus and hurried over to the driver side of the truck. Appellant's mother stated that Miller was very agitated and aggressive toward appellant. She said Miller did not appear frightened, but followed appellant who had walked away and entered the truck. Appellant's mother said that Miller stuck his head into her window and continued the confrontation, telling appellant "Well. You made a big mistake this time." She stated that she asked Miller to calm down and explain what was going on. However, she said that neither appellant nor Miller would respond. Miller allegedly would not look at her or tell her what was wrong, but just told appellant again that he had made a big mistake. Appellant replied "Well, what are you going to do about it?" Miller replied "Well, you will find out on the bus tomorrow." Appellant's mother then closed the truck's window and drove away. Appellant's mother stated that she never heard appellant threaten Miller in any way. Appellant's mother also testified that she spoke with Miller later that day and was told that he would not be filing a police report, but that a meeting with appellant's parents to address the incident would take place at school the next day.

Appellant testified that when the bus arrived at his stop, he had been closing the bus windows. He claimed that he was talking quietly to himself when Miller questioned him as to what he had said. After appellant told Miller that he was just talking to himself, Miller allegedly said "Next time you talk to yourself, keep your mouth shut." Appellant said he then got off the bus and, when he stopped a

couple car lengths from the bus, the driver yelled for him to get in the truck or he would have trouble. Appellant admitted telling Miller that he could not do anything because they were not on school property. Miller then ordered him into the truck or he would have a problem.

When appellant asked what he was going to do, Miller informed him he would call the sheriff. Appellant stated: "Go ahead." and "We can settle this right now." Miller then came to the driver's side window of the truck screaming "You made a big mistake now." Appellant stated that Miller did not look or act scared but just kept yelling at him. Appellant stated that he had no idea why Miller became so agitated and denied that he swore at Miller or threatened to "kill" or "beat [him] up." Appellant also testified that he had taken a polygraph test which corroborated the facts that he had never threatened Miller or used foul language.

Appellant's therapist, who testified out of sequence during the previous hearing, stated that appellant had been taking medication and dealing with his behavior issues. The therapist opined that it was extremely out of character that appellant would have spoken and acted in the manner described by the driver. The therapist also noted that appellant's mother did not "cover" for her son and was straightforward in dealing with her son's behavior issues.

The magistrate then issued a decision, essentially finding that appellant's version of the incident, insofar as it conflicted with the driver's, was not credible. The magistrate gave no weight to appellant's and his mother's polygraph results pursuant to admissibility requirements, despite a stipulation by all the parties that they were admissible. Appellant's objections to the decision were overruled and the juvenile court adopted the magistrate's decision.

Appellant now appeals this judgment, setting forth the following two assignments of error:

"1. The trial court erred to the prejudice of the defendant by denying the motion to dismiss at the conclusion of the state's case in chief where the state failed to prove the age of the defendant, which is an essential element that must be proven at trial.

"2. The trial court erred to the prejudice of the defendant by not permitting the admission of the results of the polygrapher when the admission of the polygraph results had been stipulated by the parties."

I

Appellant, in his first assignment of error, argues that the juvenile court lacked jurisdiction over him since the state failed to present evidence of his age. We find no merit in this assignment.

 A court has jurisdiction to rule on a controversy between parties if it has obtained personal jurisdiction over the parties and possesses subject matter jurisdiction over the parties' claims. The subject matter jurisdiction of a court is a court's "power to hear and decide a case upon its merits[.]" *Morrison v. Steiner* (1972), 32 Ohio St.2d 86, 61 O.O.2d 335, 290 N.E.2d 841, paragraph one of the syllabus. A court's subject matter jurisdiction is invoked by the filing of a complaint. See *Wilson v. Ohio Dept. of Rehab. & Corr.* (1991), 73 Ohio App.3d 496, 499, 597 N.E.2d 1148, 1149–1150. Once a court of competent jurisdiction acquires jurisdiction over an action, its authority continues until a final judgment on the merits of the dispute before it has been issued. *John Weenink & Sons Co. v. Court of Common Pleas* (1948), 150 Ohio St. 349, 38 O.O. 189, 82 N.E.2d 730, paragraph three of the syllabus. The defense of lack of subject matter jurisdiction can never be waived. *Time Warner AxS v. Pub. Util. Comm.* (1996), 75 Ohio St.3d 229, 233, 661 N.E.2d 1097, 1101. Objections based upon lack of subject matter jurisdiction may be raised at any stage of the proceedings, *In re Byard* (1996), 74 Ohio St.3d 294, 296, 658 N.E.2d 735, 737, and may even be raised for the first time on appeal. *Jenkins v. Keller* (1966), 6 Ohio St.2d 122, 35 O.O.2d 147, 216 N.E.2d 379, paragraph five of the syllabus.

 In contrast, personal jurisdiction can be waived. Civ.R. 12(H). A court obtains personal jurisdiction over a defendant by service of process, or by the defendant's voluntary appearance or actions. *Maryhew v. Yova* (1984), 11 Ohio St.3d 154, 156, 11 OBR 471, 472–473, 464 N.E.2d 538, 540–541. Thus, the defense of lack of personal jurisdiction is waived if it is not raised in a responsive pleading or in a motion filed prior to the answer. Civ.R. 12(B) and (H); see also *Franklin v. Franklin* (1981), 5 Ohio App.3d 74, 76, 5 OBR 186, 188–189, 449 N.E.2d 457, 459–460.

We will now specifically examine the question of jurisdiction of the juvenile court in the present case. A juvenile court has exclusive original subject matter jurisdiction under the Revised Code concerning children who are alleged to be delinquent or who have been placed under arrest. R.C. 2151.23(A)(1) and (8); 2151.31(A)(2); *State v. Wilson* (1995), 73 Ohio St.3d 40, 43, 652 N.E.2d 196, 198–199. R.C. 2151.02(A) provides that a "delinquent child" is any child who "violates any law * * * which would be a crime if committed by an adult." A "child" is defined for purposes of the instant case by R.C. 2151.011(B)(1) as a person who is under the age of eighteen years at the time of his commission of an offense.

 Since the complaint in this case alleged appellant to be a delinquent child, the juvenile court had subject matter jurisdiction. Appellant is not, however, arguing that he was in fact over the age of eighteen. Therefore, he is not challenging the court's subject matter jurisdiction. Rather, he is, in reality, contending that the court had no personal jurisdiction because appellee failed to

present evidence at trial of his age. Since appellant failed to challenge personal jurisdiction either in a responsive pleading or a motion prior to his answer, he waived any defense based upon personal jurisdiction. Moreover, because appellant was, in fact, under eighteen at the time of the offense, any such motion would have been denied.

Appellant may also be arguing that appellee failed to establish his age which is an essential element to prove a delinquency charge. This argument is basically a sufficiency of the evidence issue. However, in our view, once a trial court has properly established subject matter and personal jurisdiction over an alleged juvenile offender, additional evidence of the juvenile's age is not essential to a finding of delinquency, unless one of the elements of the adult crime alleged requires specific proof of age.

Accordingly, appellant's first assignment of error is not well taken.

## II

Appellant, in his second assignment of error, contends that trial court erred in excluding the polygraph results which had been stipulated to by the parties.

The admission or exclusion of evidence is generally left to the discretion of the trial court. *State v. Maurer* (1984), 15 Ohio St.3d 239, 265, 15 OBR 379, 401–402, 473 N.E.2d 768, 791–792. Polygraph results may be admitted for corroboration or impeachment if all parties sign a written stipulation as to the admission of the results and the examiner's opinion and if the trial court then finds that the examiner is qualified and the test was properly conducted. *State v. Souel* (1978), 53 Ohio St.2d 123, 7 O.O.3d 207, 372 N.E.2d 1318, syllabus.

In this case, the record reveals that the parties stipulated to the admission of the test results and, without further inquiry, the magistrate did, in fact, admit those exhibits. Nevertheless, the magistrate later decided to give those results no weight based only upon the *admissibility* requirements of *Souel.* In other words, the magistrate admitted the evidence and then, essentially revoked that admission, without providing appellant the opportunity to object or respond to concerns regarding the examiner's qualifications or other conditions pertaining to the test. In our view, this was a clear abuse of discretion. Once the test results were admitted, the magistrate was then bound to consider them. Moreover, we cannot say that such an error was harmless since the polygraph results had a direct bearing on appellant's and his mother's credibility, the central issue of the magistrate's decision.

We must also note here that the magistrate's "findings of fact" were not actually true findings, but rather merely a summary of the testimony presented.

In addition the magistrate's finding that appellant's version of the incident not credible to "the extent that [appellant's] testimony conflicts with that of Mr. Miller * * *" is confusing at best. We conclude that the magistrate's decision does not adequately indicate which specific details the magistrate found to be in conflict. Therefore, to properly indicate the magistrate's findings of fact, the decision should be corrected.[1]

Accordingly, appellant's second assignment of error is well taken.

The judgment of the Ottawa County Court of Common Pleas, Juvenile Division, is reversed and the cause is remanded for proceedings consistent with this decision.

*Judgment reversed*
*and cause remanded.*

MELVIN L. RESNICK and PIETRYKOWSKI, JJ., concur.

---

1. We give the following as examples:

"1. Chad Miller, the complainant, is employed as a teacher * * *" (*not* "Chad Miller, the complainant *testified that* he is employed as a teacher * * *.") ·

"2. On September 16, 1998, Chad Miller was driving the A.L.E.C. bus * * *" (*not* "Chad Miller *testified that* on September 16, 1998, he was driving the A.L.E.C. bus * * *.")