[Cite as *Price v. Combs*, 2016-Ohio-429.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
DARKE COUNTY**

| | | |
|---|---|---|
| MARLAY B. PRICE | : | |
| | : | |
| Plaintiff-Appellee | : | C.A. CASE NO. 2015-CA-17 |
| | : | |
| v. | : | T.C. NO. 14DIV80 |
| | : | |
| REGINA M. COMBS | : | (Civil Appeal from Common Pleas |
| | : |  Court, Domestic Relations) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

**O P I N I O N**

Rendered on the ___5th___ day of ____February____, 2016.

. . . . . . . . . . .

ERIC H. BRAND, Atty. Reg. No. 0004986, P. O. Box 158, Greenville, Ohio 45331
        Attorney for Plaintiff-Appellee

MARK J. BAMBERGER, Atty. Reg. No. 0082053, 140 East Broadway Avenue, Tipp City,
Ohio 45371
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

FROELICH, J.

{¶ 1}  Regina Combs appeals from a Judgment Entry and Decree of Divorce entered by the Darke County Court of Common Pleas, particularly with respect to the court's decision that she was properly served with the complaint, its division of the parties' assets, and its decision not to award spousal support.  For the following reasons, the

judgment of the trial court will be affirmed.

{¶ 2}   The parties were married for approximately 15 years; they each had children from previous relationships, but they did not have any children together.   On February 25, 2014, Marlay Price filed a complaint for divorce from Combs.   The court attempted service on Combs by certified mail at 10587 Conover Road in Versailles, Ohio.   At Price's request, the court also appointed a process server to serve Combs with the complaint at the same address.   The certified mail was returned unclaimed.   The result of the process server's efforts is not demonstrated by the record, but neither party asserts that he successfully served Combs with the summons.   On March 26, 2014, after the unsuccessful service by certified mail, the Clerk served Combs by ordinary mail pursuant to Civ.R. 4.6(D).

{¶ 3}   On June 5, 2014, the trial court scheduled the matter for "trial on the merits" on June 17, 2014.   At the request of Price's attorney, notice of this hearing was served on Combs by ordinary mail at the same address on Conover Road.

{¶ 4}   On June 12, 2014, Combs requested a continuance of the trial date, asserting that she had not "received copy of divorce," needed additional time to retain an attorney, and had been unable to reach Price's attorney.   The trial court granted the continuance, and a pretrial was scheduled for July 15.

{¶ 5}   On July 14, 2014, Combs filed another motion for a continuance.   In her motion, she asserted various facts related to the parties' separation and properties; she also reasserted that she was never served but acknowledged that "They tried by regular mail."   Combs stated that she needed an attorney for the divorce action and also for pending foreclosure proceedings regarding the marital home, that she had been in

contact with an attorney but needed a "retainer fee," that she was "having to sell items to come up with attorney fees," and that her father was seriously ill. Combs also asserted that Price was represented by "the same attorney for St. Henry's Bank for our house," and that "law professionals" had told her this was a conflict of interest. The trial court granted the continuance and scheduled a final hearing for October 6, 2014.

**{¶ 6}** An attorney entered an appearance for Combs on October 3, 2014. Counsel stated that he had a conflict with the time of the hearing and that he needed additional time to prepare. The trial court continued the matter until November 4, 2014. On October 28, Combs's counsel filed a motion for leave to withdraw as counsel, which was granted.

**{¶ 7}** On October 31, Combs filed a pro se "Notice of Stay and Request for Suspension of Proceedings," based on the fact that she had filed a petition for bankruptcy two days earlier; the bankruptcy petition was attached.[1] On November 3, 2014, the trial court granted an indefinite stay "pending resolution of the bankruptcy case."

**{¶ 8}** On March 4, 2015, the bankruptcy court granted a Motion for Relief from Stay for Divorce, with the agreement of the parties. Thus, on March 9, Price asked the trial court to restore the divorce proceedings to the active docket. The court granted this motion the same day. The court issued a pre-trial discovery order and set the trial for April 13, 2015.

**{¶ 9}** Combs did not appear for trial, nor did any attorney appear on her behalf. The magistrate proceeded without her. The magistrate filed a Decision and Order on

---

[1]This notice, although signed by Combs "pro se," was on the letterhead of the law firm representing her in the bankruptcy, and was prepared by the law firm for Combs to file herself.

April 21, 2015.

{¶ 10} The magistrate noted that the parties had suffered a substantial decrease in their standard of living after Price lost his job in 2011 due to "down-sizing." They were no longer able to afford the marital residence, which had a mortgage in excess of $400,000 and was in foreclosure by the time of the hearing. Price was solely liable for the mortgage[2] and he was working with the bank to sell the house. The bank had agreed to allow him to attempt to sell the house privately, rather than through a sheriff's sale. However, Combs was still living in the home, and it was in "disarray."

{¶ 11} According to the magistrate's findings, Price had given Combs money to pay the utilities and taxes on the house, but she had not done so. As a result, the bank had taken over such payments, but was adding those costs to the mortgage, such that the mortgage was increasing. Price requested that he be given control of the house to make it presentable for sale. The magistrate granted this request and ordered Combs to vacate the house by May 31, 2015. The magistrate also ordered Combs to cooperate with the sale of the house by signing necessary documents and the like. If any equity in the house remained after the sale, the magistrate found that it should be divided equally.

{¶ 12} With respect to the parties' personal property, Price asked for all the items he brought into the marriage, for property he had inherited from his parents, and for his personal effects, including a laptop computer, photographs, and financial records. He did not request any other personal property, and he testified that a substantial amount of furniture would remain for Combs after he took the requested items. The magistrate

---

[2]No explanation was provided for Price's sole responsibility for the mortgage, including whether this was a function of the bankruptcy proceedings.

granted Price's requests with respect to the personal and non-marital property.

{¶ 13} Relevant to the issue of spousal support, the magistrate found that both parties were college graduates, and Price also had an MBA. Price, who was age 67 at the time of the divorce, was working as a cashier at a hardware store and collecting a small pension ($600 per month) and Social Security. Combs, age 59, was not working. Neither party had any physical limitations that prevented them from working. The magistrate found that spousal support was not appropriate, considering the parties' respective ages and the marital debt for which Price would be responsible. The magistrate noted that it was "unknown" whether any of Price's pension was earned during the marriage but that, if so, Combs was entitled to half of the marital portion.

{¶ 14} Combs filed objections, pro se, to the magistrate's decision. In her objections, she again asserted that she had not been served with the divorce papers. She also requested that she be awarded 1) the house at 10587 Conover Rd.[3] as well as its outbuildings "free and clear" from debt, because she had lived there for 15 years and was accustomed to living there, 2) a vehicle equal in value to what she was accustomed to driving in the past (a Cadillac Escalade), 3) payment of all of her children's college loans, totaling approximately $150,000, as Price had allegedly agreed to do in "a contract," and 4) spousal support, including retroactively.

{¶ 15} More generally, Combs suggested in her objections that Price, on the

---

[3]Combs's objections refer to 10585 Conover Road, whereas all of the other documents in the trial court refer to 10587 Conover Road as the marital home and the home where Combs still lived at that time. We assume that there was a typographical error in Combs's objections. We note, however, that Combs also refers to 10585 Conover Road in her brief, as another property that the couple had owned and then sold during the marriage. If this were the case, the transaction related to 10585 does not appear to be relevant to this appeal.

advice of his attorney, had stopped making voluntary support payments to her when she filed for bankruptcy; she asserted that this behavior indicated an attempt to hide assets and requested more time to "research all records." She also suggested that 1) the bankruptcy court was still investigating Price's assets, although he was not a party to those proceedings, 2) Price had misrepresented his claim to some personal property, 3) the mortgage-holding bank had "broken into" the marital house in which she lived, "taken" a dog, and attempted to prevent her access to the house on at least two occasions, which entitled her to remain in the house "until discoveries are all final," 4) the law firm representing Price in both the divorce and foreclosure proceedings had a conflict of interest; 5) there was something "unethical" in the same Darke County judge hearing both the divorce and foreclosure proceedings actions, and 6) her rights had been violated by the Darke County court system. Combs did not file a transcript of the hearing before the magistrate.

{¶ 16} In the trial court's judgment entry, it observed that Combs did not file a transcript of the proceedings before the magistrate. (The objecting party is required to provide a transcript when it asks the trial court to review the factual findings of a magistrate. Civ.R. 53(D)(3)(b)(iii)). Given that her objections raised issues of fact, the court found that it could not review them, and no additional arguments could be considered. It also observed that the magistrate had considered correct legal factors in reaching its conclusions, and that the facts set forth in the magistrate's decision supported its findings. The trial court adopted the magistrate's decision, and it issued a Judgment Entry and Decree of Divorce that incorporated the magistrate's recommendations.

{¶ 17} Combs appeals, raising three assignments of error.

### *Service of the Complaint*

**{¶ 18}** In first assignment of error, Combs asserts that she was not properly served with the complaint for divorce.

**{¶ 19}** Service of process must be made in a manner reasonably calculated to apprise interested parties of the action and to afford them an opportunity to respond. *Akron-Canton Regional Airport Auth. v. Swinehart,* 62 Ohio St.2d 403, 406, 406 N.E.2d 811 (1980), citing *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). The plaintiff bears the burden of obtaining proper service on a defendant. *Cincinnati Ins. Co. v. Emge,* 124 Ohio App.3d 61, 63, 705 N.E.2d 408 (1st Dist.1997). Where the plaintiff follows the Civil Rules governing service of process, courts presume that service is proper unless the defendant rebuts this presumption with sufficient evidence of non-service. *Carter-Jones Lumber Co. v. Meyers,* 2d Dist. Clark No. 2005 CA 97, 2006-Ohio-5380, ¶ 11.

**{¶ 20}** Under Civ.R. 4.1(A), service may be made by certified or express mail, personal service, or residential service. If certified or express mail service is attempted and the envelope "is returned with an endorsement showing that the envelope was unclaimed," the party requesting service must be notified and that party may then request service by ordinary mail. Civ.R. 4.6(D). "[T]he clerk shall send by ordinary mail a copy of the summons and complaint or other document to be served to the defendant at the address set forth in the caption, or at the address set forth in written instructions furnished to the clerk. * * * Service shall be deemed complete when the fact of mailing is entered of record, provided that the ordinary mail envelope is not returned by the postal authorities

with an endorsement showing failure of delivery." *Id. See also Corley v. Sullivan-Busman*, 8th Dist. Cuyahoga No. 99420, 2013-Ohio-3909, ¶ 12.

**{¶ 21}** The record establishes that Combs was served in accordance with the Civil Rules. Although she claims that she did not receive the complaint, she does not dispute that it was mailed – first by certified mail and then by ordinary mail – to the proper address. Indeed, in her objection to the court's award of the house to Price, she asserted that she had lived in this house since 1999. She claimed only that she was out of town visiting her daughter at the time of the mailings, and that Price knew of this fact and tried to take advantage of it. Combs responded within one week to a notice of hearing date that was sent to her at the same address in June 2014. Further, the address at which Combs was served by certified and ordinary mail in early 2014 was the same address that Combs used on her petition for bankruptcy in October 2014. The trial court reasonably concluded that Combs had been properly served at this address.

**{¶ 22}** We also note that personal jurisdiction over a defendant can be obtained not only by proper service of process, but by a defendant's voluntary appearance or actions. *See, e.g., In re C.T.*, 2d Dist. Montgomery No. 24036, 2010-Ohio-5887, ¶ 12, and *In re S.H.*, 2d Dist. Montgomery No. 23382, 2009-Ohio-6592, ¶ 34, both citing *In re Burton S.,* 136 Ohio App.3d 386, 391, 736 N.E.2d 928 (6th Dist.1999). Combs waived her objection to the alleged lack of service and personal jurisdiction by participating in these proceedings.

**{¶ 23}** The first assignment of error is overruled.

***Financial Information***

**{¶ 24}** In her second assignment of error, Combs argues that the trial court "erred

in ruling in favor of [Price's] financial information without adequate proof that the financial information was correct." Specifically, she claims that Price sold land and hid the profits, that he misrepresented his financial holdings, that he had a "fortune," and that she should have been allowed to continue to live in the house and to receive spousal support.

{¶ 25} The trial court's purpose in conducting a hearing is to hear evidence from both parties, assess its credibility, and resolve factual disputes. By her own choice and without explanation, Combs decided not to participate in the trial court proceedings or to present any evidence in support of her view of the parties' assets and what would be a fair division of those assets. She cannot now be heard to complain that the trial court did not give adequate weight to her viewpoint. Moreover, she had been given ample time to prepare or obtain "a full accounting" of the parties' assets and liabilities; after numerous extensions during which she made little, if any, progress in obtaining representation or presenting specific information about the alleged "hidden" assets, and during which she pursued her own bankruptcy proceeding, the trial court did not abuse its discretion in proceeding to the merits of the case.

{¶ 26} Combs's assertions about hidden assets and "fortune" in the trial court were too unspecific and unsubstantiated to be given any weight. Her suggestion that she should have been awarded the marital home, without any evidence to refute Price's claims that she had not paid for or maintained the house and that the house was in foreclosure, and without any explanation of how she would have avoided foreclosure, was unrealistic. Moreover, Combs's suggestion as to what would have been a proper division of the marital property ignores the undisputed evidence that, since Price's loss of his job in 2011, the parties simply could not afford to live as they previously had, married or not.

Combs's arguments also fail to acknowledge that she was entitled to only half of the marital assets. Based on the evidence presented regarding available assets, her suggestion that she should have been awarded the house, a high-end car, and spousal support was unrealistic and inequitable.

{¶ 27} The second assignment of error is overruled.

***Spousal Support***

{¶ 28} In her third assignment of error, Combs asserts that she should have been awarded spousal support. Again, due to Combs's decision not to participate, the evidence presented on this issue was limited to what Price presented.

{¶ 29} According to the magistrate's decision, Price testified that he received a pension of $600 per month, Social Security (in an unspecified amount), and $14.50 per hour working at a hardware store. Combs was not working. Neither party had any impairment that prevented or restricted the ability to work, and both were college-educated. Price and Combs were ages 67 and 59 respectively at the time of the divorce. The magistrate's decision did not address whether any evidence was presented regarding Combs's employment prospects or employment history; as noted above, no transcript of the proceedings has been provided.

{¶ 30} Although a party's Social Security benefits cannot be directly divided as a marital asset, those benefits must be evaluated and considered by the court in effecting an equitable distribution of the parties' marital assets, particularly their pension and retirement funds. *Carter v. Carter*, 2d Dist. Clark No. 2008 CA 54, 2009-Ohio-3637, ¶ 37, citing *Hurte v. Hurte,* 164 Ohio App.3d 446, 842 N.E.2d 1058, 2005-Ohio-5967, at ¶ 14 (4th Dist.). Social Security benefits are less relevant to a court's spousal support

determination, but where, as in this case, the parties are at or near the point of receiving payment of such benefits, it may be one relevant factor in the spousal support determination.

**{¶ 31}** The trial court awarded Combs half of any equity from the sale of the parties' home and half of the marital portion of Price's pension. Although it did not say so, the trial court could have reasonably concluded that Combs was able to work and could reasonably expect to earn an income comparable to what Price earned as a cashier at a hardware store. In the absence of any evidence from Combs about her work history or her future entitlement to Social Security, the trial court could also have reasonably assumed that she would soon be eligible to collect her own Social Security benefits. In light of this assumption and Price's acceptance of responsibility for the mortgage on the marital home, and in light of our limited ability to review the factual findings without a transcript, we must conclude that the court reasonably found that no spousal support was warranted.

**{¶ 32}** The third assignment of error is overruled.

**{¶ 33}** The judgment of the trial court will be affirmed.

. . . . . . . . . . . . .

DONOVAN, P.J. and FAIN, J., concur.

Copies mailed to:

Eric H. Brand
Mark J. Bamberger
Hon. Jonathan P. Hein