[Cite as *WBCMT 2007-C33 Office 7870, L.L.C. v. Breakwater Equity Partners, L.L.C.*, 2019-Ohio-3935.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

|  |  |  |
|---|---|---|
| WBCMT 2007-C33 OFFICE 7870, LLC, | : | APPEAL NO. C-180127 |
|  |  | TRIAL NO. A-1304126 |
| Plaintiff-Appellant, | : |  |
|  | : | *O P I N I O N.* |
| vs. | : |  |
| BREAKWATER EQUITY PARTNERS, LLC, | : |  |
|  | : |  |
| THOMPSON NATIONAL PROPERTIES, LLC, | : |  |
| TNPPM KEMPER POINTE, LLC, | : |  |
| and | : |  |
| ANTHONY W. THOMPSON, | : |  |
| Defendants-Appellees. | : |  |

Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Reversed and Cause Remanded

Date of Judgment Entry on Appeal:  September 27, 2019

*Barnes & Thornburg LLP, David Dirisamer, Alan K. Mills* and *Jonathan D. Sundheimer,* for Plaintiff-Appellant,

*Edward J. McTigue,* for Defendants-Appellees.

**BERGERON, Judge.**

{¶1} The genesis of this appeal begins with a seemingly-innocuous decision to seek leave to amend a complaint. The trial court obliged, setting off a cascade of subsequent events that might render this case a fixture in the lore of civil procedure professors for years to come.

{¶2} The decision to amend the complaint arose at an unusual juncture: after the plaintiff had secured a partial agreed judgment. We are called upon to decide whether orders preceding the amendment divested the trial court of its jurisdiction over this particular case and whether we must undo over three years of litigation—during which that jurisdiction was never questioned by anyone.

{¶3} Part of the problem here is that "jurisdiction" is a term of many stripes, and one that is oft-misunderstood based on its somewhat haphazard use. This case generated confusion between "jurisdiction over the case" and "subject matter jurisdiction," as the trial court essentially conflated the two concepts. But defects in the former are waivable, whereas defects in the latter are not. This case involves "jurisdiction over the case," and by sitting on their hands for three years, the defendants waived any objection to the trial court's jurisdiction over this case. We ultimately conclude that the trial court correctly allowed the amendment of the complaint and that even if that were erroneous, any jurisdictional defect has long since been waived. We accordingly reverse the decision to dismiss the case for lack of jurisdiction and remand this matter to the trial court.

I.

{¶4} Plaintiff-appellant WBCMT 2007-C33 Office 7870, LLC, ("WBCMT") initially filed a two-count lawsuit for breach of contract and foreclosure against 22 separate borrower entities ("Borrowers"), the Hamilton County Treasurer, and 100

John Doe defendants.  In addition to the two counts, the complaint's prayer for relief sought "[j]udgment against Borrowers for all costs of collection of the debt, including but not limited to, interest, attorneys' fees, and other costs[.]"  About six months later, in January of 2014, the matter was largely settled with a "Partial Agreed Judgment," which entered final judgment in favor of WBCMT and against the Borrowers on both counts of the complaint.  It did not, however, finally determine the costs of collection or resolve the question of attorney fees.  WBCMT sold the property at a sheriff's sale and went on to secure an "Entry Confirming Sale & Ordering Deed" ("Confirmation Order").

{¶5}   Subsequent to the Partial Agreed Judgment, WBCMT sought leave to amend its complaint (without opposition) in mid-2014.  The trial court entered the order granting leave and the Confirmation Order on the same day.  The amended complaint substituted the Borrowers with Breakwater Equity Partners, LLC, ("Breakwater"); Thompson National Properties, LLC, ("TNP"); TNPPM Kemper Pointe, LLC, ("TNPPM"), and Anthony W. Thompson (president of TNP); and substituted conversion, fraudulent conveyance, and unjust-enrichment claims for the breach-of-contract and foreclosure claims.   The latter three defendants have responded as appellees in this appeal, and we refer to them, collectively, as "the Thompson Defendants."   According to WBCMT's allegations, the Borrowers had engaged TNP, by and through TNPPM, to manage their collateral real estate.  TNP and TNPPM allegedly transferred significant sums generated from that real estate (also its collateral) to Breakwater (thereby stripping assets from which debt service payments could have been made), which WBCMT sought to recover via the amended complaint.  But to the untrained eye, the amended complaint bears little, if any,

3

resemblance to the original complaint, begging the question of why WBCMT opted for this path rather than simply commencing a new action.

{¶6} Although the procedure was novel, no one complained about the move. The Thompson Defendants simply got on with the business of litigating the case, and after the case lingered for a while, WBCMT moved for, and secured, summary judgment on the amended complaint. The Thompson Defendants appealed, but we dismissed that appeal by a Judgment Entry—noting that the judgment entered in favor of WBCMT on the amended complaint did not determine punitive damages, attorney fees, or certain indeterminate amounts payable under the loan documents. Therefore, we dismissed the appeal for lack of a final order.

{¶7} Back in the trial court, WBCMT sought to render the judgment final by filing a "Notice of Conditional Waiver of Claims" related to its summary judgment. But the matter was assigned to a new judge in June of 2017, and the judge never acted on that request. Instead, following its review of the case, the trial court sua sponte ordered briefing on its continuing jurisdiction over the case—raising numerous questions about the finality of the Partial Agreed Judgment; the finality of the Confirmation Order, the effect of such finality (if any) on the amended complaint and the trial court's continuing jurisdiction; and the effect of the amended complaint (if valid) on prior orders of the trial court. After briefing and argument, the trial court concluded that it never had jurisdiction over the amended complaint because the Partial Agreed Judgment and Confirmation Order were final, appealable orders. It correspondingly vacated all orders and entries related to the amended complaint and dismissed the amended complaint without prejudice. With the stroke of a pen, the court erased three years of litigation. WBCMT now appeals the trial court's judgment.

{¶8} We pause, before proceeding with the analysis, to highlight the jurisdictional concepts that animate this appeal. While the term "jurisdiction" is frequently used in a generic sense, it refers more precisely to three, distinct concepts: "jurisdiction over the subject matter, jurisdiction over the person, and jurisdiction over a particular case." *Bank of Am., N.A. v. Kuchta*, 141 Ohio St.3d 75, 2014-Ohio-4275, 21 N.E.3d 1040, ¶ 18. Subject-matter jurisdiction is power conferred, by the Constitution and other law, on the court over a particular type of case. *Id.* at ¶ 20. Subject-matter jurisdiction requires no "regard to the rights of the individual parties involved in a particular case." *Id.* at ¶ 19.

{¶9} Jurisdiction over a particular case (also referred to as "jurisdiction over the case"), by contrast, connotes "the court's authority to proceed or rule on a case that is within the court's subject-matter jurisdiction." *Id.*, citing *Pratts v. Hurley*, 102 Ohio St.3d 81, 2004-Ohio-1980, 806 N.E.2d 992, ¶ 12. Put differently, "an inquiry into a party's ability to *invoke* a court's jurisdiction speaks to jurisdiction over a particular case, not subject-matter jurisdiction." (Emphasis sic.) *Id.* at ¶ 22. Errors in that invocation "cause[] a judgment to be voidable rather than void." *Id.* at 19, citing *Pratts* at ¶ 12.

{¶10} The third strand, personal jurisdiction, refers to the principle that the "Due Process Clause of the Fourteenth Amendment to the United States Constitution requires that a valid judgment imposing a personal obligation or duty in favor of the plaintiff may be entered only by a court having jurisdiction over the person of the defendant." *Meadows v. Meadows*, 73 Ohio App.3d 316, 319, 596 N.E.2d 1146 (3d Dist.1992), citing *Pennoyer v. Neff*, 95 U.S. 714, 24 L.Ed. 565 (1877), and *Internatl. Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Generally, Ohio courts have personal jurisdiction over Ohio residents. *Prouse, Dash & Crouch,*

5

*L.L.P. v. DiMarco*, 116 Ohio St.3d 167, 2007-Ohio-5753, 876 N.E.2d 1226, ¶ 5.  A court's personal jurisdiction over a nonresident requires a more complex inquiry concerning the applicable long-arm statute, the civil rules, and/or relevant due-process considerations.

{¶11} Although the lines were blurred somewhat below, and to a certain extent on appeal, the parties all now agree the asserted defect that we consider today relates to jurisdiction over a particular case.  That version of jurisdiction, however, has generated perhaps the least case law, so we must consider authority proffered on all three types of jurisdiction as we navigate the arguments of the parties and the decision of the trial court below.  While analogies may be appropriate in certain respects, it is crucial to maintain appropriate distinctions between these legal concepts in considering this appeal, lest we fall into the same trap about which we have warned.

## II.

{¶12} The jurisdictional questions raised by the trial court are rooted in the premise that the trial court lacked jurisdiction to grant the motion to amend the complaint, matters we review de novo.  A threshold issue then, it seems to us, is whether Civ.R. 15 permitted WBCMT's amended complaint.  Without controlling authority on this particular application of Civ.R. 15, we turn as a guide to general case law applying Civ.R. 15 in part A of this opinion.  From there, in part B, we proceed to discuss the jurisdictional questions implicated by the amended complaint.  We assess whether—regardless of propriety under Civ.R. 15—certain orders below divested the trial court of its continuing jurisdiction over the amended complaint (implicating WBCMT's second, third, and fourth assignments of error).  Finally, in part C, we consider whether the assertion of jurisdiction over this particular case, if

6

error, could have been waived and whether the trial court could have raised it sua sponte—encompassing WBCMT's first assignment of error.

A.

{¶13} Under Civ.R. 15(A), regarding amendments other than those as a matter of course: "[A] party may amend its pleading only with the opposing party's written consent or the court's leave. The court shall freely give leave when justice so requires." Trial courts have discretion as to whether to grant leave. *Turner v. Cent. Local School Dist.*, 85 Ohio St.3d 95, 99, 706 N.E.2d 1261 (1999). The Supreme Court of Ohio has emphasized that "the language of Civ.R. 15(A) favors a liberal amendment policy and a motion for leave to amend should be granted absent a finding of bad faith, undue delay or undue prejudice to the opposing party." *Hoover v. Sumlin*, 12 Ohio St.3d 1, 6, 465 N.E.2d 377 (1984), *modified on other grounds, Jim's Steak House, Inc. v. City of Cleveland*, 81 Ohio St.3d 18, 688 N.E.2d 506 (1998). *See Peterson v. Teodosio*, 34 Ohio St.2d 161, 175, 297 N.E.2d 113 (1973) ("[W]here it is possible that the plaintiff, by an amended complaint, may set forth a claim upon which relief can be granted, and it is tendered timely and in good faith and no reason is apparent or disclosed for denying leave, the denial of leave * * * is an abuse of discretion."). We are all familiar with these principles, but the question here really is one of timing.

{¶14} The rule also contemplates certain, specific situations in which tardy amendments, even postjudgment, may be appropriate: "[A]mendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion * * * at any time, even after judgment." Civ.R. 15(B). We thus know that the rule allows for belated amendments, but the language of subsection (B) fails to answer the question at hand.

7

{¶15} Considering the timeliness requirement under Civ.R. 15(A) relative to amending a complaint to correct the name of the defendant, our Supreme Court noted (albeit in dicta) that "Ohio law does not specify a time within which a motion to amend must be filed[]"—citing to decisions from other jurisdictions allowing such amendment at trial, after trial and before judgment, after judgment, and even after an affirmance on appeal. *Patterson v. V & M Auto Body*, 63 Ohio St.3d 573, 589 N.E.2d 1306 (1992), fn. 1. It reiterated: "The timeliness of the motion is defined by the reasonable diligence of the moving party and any prejudice to defendant's ability to defend, and those are questions of law to be determined by the court." *Id.*, citing *Garay v. The Star Ledger*, 251 N.J.Super. 289, 598 A.2d 22 (1991). This passage thus seems to grant the trial court discretion on the timeliness determination, even at very late hours during the course of a case.

{¶16} We do not see, nor have the Thompson Defendants directed our attention to, any line in the sand under the Civil Rules for purposes of when a complaint may be amended. Rather, flexibility informed by the trial court's discretion seems to rule the day. *See Birmingham Fire Ins. Co. v. River Downs Race Track*, 26 Ohio App.3d 139, 141, 499 N.E.2d 18 (1st Dist.1985) (upholding amendment to add claims more than four years after filing). Guidance from the Ohio Supreme Court suggests that, when weighing the propriety of a belatedly-amended pleading, courts should consider whether it is the product of bad faith, results in undue delay, or inflicts undue prejudice. *See Hoover*, 12 Ohio St.3d at 6, 465 N.E.2d 377; *Peterson*, 34 Ohio St.2d at 175, 297 N.E.2d 113; *Patterson*, 63 Ohio St.3d at fn. 1, 589 N.E.2d 1306. On the record at hand, none of those considerations apply.

{¶17} We see no evidence—let alone any allegation—of bad faith against WBCMT. Nor have the Thompson Defendants articulated any undue prejudice

flowing from the amendment—they had to defend the lawsuit, to be sure, but that is not the type of prejudice that bars an amended complaint.[1] The Thompson Defendants also cannot show undue delay given that their involvement in the lawsuit did not predate the amendment. And in response to why it amended to add the Thompson Defendants, WBCMT insists that collection issues, only brought to light after the appointment and initial work of the receiver, revealed the necessity to pursue the Thompson Defendants. Consideration of these factors suggests that the trial court appropriately exercised its discretion to allow the amended complaint. (We hasten to point out that the court certainly was not obligated to allow the amendment if it felt the requisite factors pointed the other way—but that is not the record before us.). As far as the Civil Rules go, therefore, we see nothing that would bar the amended complaint before us.

B.

{¶18} Rather than mounting a rule-based defense, the Thompson Defendants frame the operative timing question slightly differently—asking whether a final judgment in the original action preceded the amended complaint and accordingly divested the trial court of jurisdiction. The second trial court judge concluded that the presence of final judgments, both the Partial Agreed Judgment and Confirmation Order, stripped the court of further jurisdiction.[2] For the reasons discussed below, we reach a different conclusion.

---

[1] The dissent criticizes our Civ.R. 15 analysis but offers no controlling authority to show that a trial court acts outside the breadth of its broad discretion to grant an amendment on the facts at hand here. And the dissent's concerns about sharp practices by litigants (¶ 50) is answered readily enough by the delay/prejudice/bad faith standard that allows courts to reject amendments when the applicant is engaged in shenanigans.

[2] The trial court and the Thompson Defendants cite to *In re Burton S.*, 136 Ohio App.3d 386, 391, 736 N.E.2d 928 (6th Dist.1999), for the broad proposition that "[o]nce a court of competent jurisdiction acquires jurisdiction over an action, its authority continues until a final judgment on the merits of the dispute before it has been issued." (Citation omitted.) But *Burton* did not address jurisdiction over the case—instead, it considered a challenge to personal jurisdiction, which it ultimately found waived (which militates in favor of finding waiver here, as we will discuss below).

{¶19} The Partial Agreed Judgment invoked Civ.R. 54(B)'s "no just reason for delay" language, suggesting the intent for the judgment to be final notwithstanding the persistence of certain remaining claims. As explained by *Miller v. First Internatl. Fid. & Trust Bldg., Ltd.*, 113 Ohio St.3d 474, 2007-Ohio-2457, 866 N.E.2d 1059, ¶ 10: "It is only in cases in which fewer than all the claims or fewer than all the parties are disposed of in the entry that the phrase 'no just reason for delay' has meaning." While it contained some internal inconsistency as far as the total amount of damages, one could search the Partial Agreed Judgment in vain for any determination of the amount of collection costs, including attorney fees, sought by the original complaint. But it did resolve both counts in the complaint, so what remained?

{¶20} WBCMT answers by pointing to *Chatfield and Woods Sack Co., Inc. v. Nusekabel*, 1st Dist. Hamilton No. C-980315, 1999 WL 960782 (Oct. 22, 1999), for the proposition that the number of formal counts of a complaint does not necessarily equate to the number of claims subject to disposition when considering finality for purposes of appeal. In *Chatfield*, the underlying complaint brought counts for a money judgment under a promissory note and for foreclosure on the mortgage. *Id.* at *2. Given the context of the complaint as a whole, however, this court concluded that the complaint set forth two additional claims for legal fees and protection costs. *Id.* It found that, given the presence of Civ.R. 54(B) language, "as to the money-damages and foreclosure claims, the entry from which this appeal was taken [did] contain a final appealable order." *Id.* at *3. But as to protection costs and legal fees, "the entry [was] not a 'final order.' " *Id.*

{¶21} The Thompson Defendants say not so fast, endeavoring to limit the applicability of *Chatfield* by noting that it held that the foreclosure judgment aspect

10

of the order remained final. But we do not find that distinction helpful to their position. Where the question is whether the trial court retained jurisdiction over the case, *Chatfield* suggests an affirmative answer. The fact that the court found another aspect of the judgment final for purposes of appeal does not compel the trial court's loss of jurisdiction over nonfinal issues. We thus find that *Chatfield* supports the conclusion that the trial court retained jurisdiction over the case.[3]

{¶22} The trial court's opinion did not address *Chatfield* and instead primarily relied on *CitiMortgage, Inc. v. Roznowski*, 139 Ohio St.3d 299, 2014-Ohio-1984, 11 N.E.3d 1140, in finding that the Partial Agreed Judgment constituted a final order. *Roznowski* held: "[A] judgment decree in foreclosure that includes as part of the recoverable damages amounts advanced by the mortgagee for inspections, appraisals, property protection, and maintenance but does not include specific itemization of those amounts in the judgment is a final, appealable order pursuant to R.C. 2505.02(B)(1)." *Id.* at ¶ 19. The court elaborated: "Liability is fully and finally established when the court issues the foreclosure decree and *all that remains is mathematics*, with the court plugging in final amounts due after the property has been sold at a sheriff's sale." (Emphasis added.) *Id.* at ¶ 25. *See Farmers State Bank v. Sponaugle*, Slip Opinion No. 2019-Ohio-2518, ¶ 29-30 ("*Sponaugle II*") (holding that the outstanding calculations of a tax lien and certificate of judgment lien did not prevent a final judgment; as both amounts were subject to routine, formulaic determination, all that remained was the "ministerial task of calculating the final amount due after sale of the property."). This characterization is instructive for our purposes—as the determination of attorney fees goes well beyond the rote

---

[3] The dissent dismisses *Chatfield* as irrelevant, highlighting language from WBCMT's filings below as ostensibly conceding the finality of the Partial Agreed Judgment. But none of the language quoted includes the word "final"—for purposes of jurisdiction or otherwise. And even if it had, a party cannot render a judgment final by declaration—it remains incumbent upon us to assess finality.

application of mathematics or ministerial calculations. *See Miller,* 113 Ohio St.3d 474, 2007-Ohio-2457, 866 N.E.2d 1059, at ¶ 7 (orders that defer damages or leave open a noneasily-computed/nonministerial cost are generally not final under R.C. 2505.02). Another way of saying this is just because an order might be final for purposes of appellate review does not mean that it necessarily bars the trial court from conducting further proceedings—real work may be left to be done.

{¶23} Perhaps anticipating this comeback, the Thompson Defendants are adamant that, if the Partial Agreed Judgment was not final, then WBCMT's subsequent execution upon it was not appropriate, featuring *Marion Prod. Credit Assn. v. Cochran*, 40 Ohio St.3d 265, 533 N.E.2d 325 (1988), in this regard. But that case concerned the propriety of foreclosure and sale where the mortgagees' counterclaim remained outstanding: "It is reasonably well-settled in Ohio that a court which has before it both a claim and a counterclaim cannot enter a final judgment in favor of either party until both claims have been determined." *Id.* at 270. That is not the case here—indeed, we consider a *negotiated and agreed* judgment without a counterclaim. We are not persuaded that *Marion* controls given the facts at hand.

{¶24} Moreover, in the Second District's opinion in *Farmers State Bank v. Sponaugle*, 2017-Ohio-4322, 92 N.E.3d 355 (2d Dist.) ("*Sponaugle I*"), *modified on reconsideration*, 2d Dist. Darke No. 2016-CA-4, 2017-Ohio-7744, *cause dismissed*, 152 Ohio St.3d 1403, 2018-Ohio-723, 92 N.E.3d 876, *appeal allowed in part*, 152 Ohio St.3d 1405, 2018-Ohio-723, 92 N.E.3d 878, *rev'd on other grounds*, Slip Opinion No. 2019-Ohio-2518, cited favorably by the Thompson Defendants for the proposition that execution on nonfinal judgments is improper, the court made a point that underscores the insignificance of any error in the sale to this appeal. It

12

observed that allowing execution pursuant to a nonfinal order may constitute error, but "[a]lthough it may be error for a trial court to execute on a non-final order, in neither *Roach* [*v. Roach*, 164 Ohio St. 587, 132 N.E.2d 742 (1956)] nor *Marion* did the Ohio Supreme Court hold that a trial court lacks jurisdiction to do so. Not all error is jurisdictional * * *." (Citation omitted.) *Sponaugle I* at fn. 2. *Compare Mulby v. Poptic*, 8th Dist. Cuyahoga No. 98324, 2012-Ohio-5731, ¶ 15 ("Whether an order is appealable merely relates to this court's jurisdiction to review it at that time; the fact that the order was not appealable does not render it a nullity."); *State ex rel. Zein v. Calabrese*, 2017-Ohio-8325, 99 N.E.3d 900, ¶ 15 (8th Dist.) (following *Mulby*). No one has challenged the sale of the property in this appeal. Even if the execution accomplished here was improper, we cannot see how it would create an error of jurisdictional dimension. *Compare Falls Sav. Bank, F.S.B. v. Cadwell*, 9th Dist. Summit No. 14644, 1991 WL 11372, *3 (Jan. 31, 1991) ("A 'final judgment' against all parties or a judgment employing Civ.R. 54(B) language is not a prerequisite to these [execution and sale] procedures."). Rather, this strikes us as more of a "procedural irregularity" (described below in subsection C) that would trigger the obligation of some party to cry foul.

{¶25} Relatedly, we point out that the Supreme Court nearly (but did not) decide a similar issue recently—the appellant therein presenting as an issue of law in the latest iteration of the *Sponaugle* case, *Songaugle II*, Slip Opinion No. 2019-Ohio-2518, at ¶ 17: "A sheriff's sale can be confirmed even if the underlying foreclosure decree was a non-final order." The court decided the case on different grounds (concluding the underlying foreclosure had been, contrary to what the Second District had determined, a final order), leaving the question open for another day. The concurring opinion, however, analyzed this point and concluded: "[N]othing in

R.C. 2329.31 requires an appealable foreclosure order as a prerequisite to confirming the sale." *Id.* at ¶ 49 (DeWine, J., concurring in judgment only). Justice DeWine favorably cites *Mulby* and *Falls Sav.* and distinguishes *Marion*: "There, we concluded that the trial court erred by allowing the foreclosure and sale of mortgaged property prior to the disposition of all pending counterclaims. * * * . [I]n this case, there were no counterclaims pending when the trial court ordered the sale of the property." *Id.* at ¶ 53. While that is only a concurring opinion, it represents the most recent pronouncement from the Ohio Supreme Court and aligns with our analysis above.

{¶26} Unpersuaded that the Partial Agreed Judgment constituted a final order that would terminate further jurisdiction over the case, we shift to consideration of the Confirmation Order to see whether that changes the jurisdictional calculus. As the Supreme Court recently explained, "[t]he confirmation of sale is an ancillary proceeding limited to whether the sheriff's sale conformed to law." *Sponaugle II* at ¶ 19. The trial court and the Thompson Defendants point to the Confirmation Order as a separate and independent basis that divested the court of jurisdiction. But their arguments miss the forest for the trees. Although we need not expound upon the nuances of confirmation orders and finality, suffice it to say that not every sale confirmation order is necessarily final for purposes of appeal. *See JP Morgan Chase Bank v. Dewine*, 3d Dist. Logan No. 8-08-20, 2009-Ohio-87 (dismissing appeal of confirmation of sheriff sale where such order was not a final order); *Brake v. Keegan*, 6th Dist. Sandusky No. S-17-034, 2018-Ohio-3979, ¶ 9 ("[W]here claims are still pending in the trial court after the order confirming the sale, the order must have a Civ.R. 54(B) certification to be appealed."); *Whipps v. Ryan*, 10th Dist. Franklin No. 12AP-509, 2013-Ohio-4334, ¶ 32 ("Although the

14

confirmation orders and order terminating the receiver were final orders, because a claim remains pending in the action, and the final orders do not contain Civ.R. 54(B) language, they are not final, appealable orders."). This makes intuitive sense; taking the argument—that confirmation orders are always final in the sense that they divest a trial court of further jurisdiction—to its logical extreme yields an illogical result: foreclosure cases could not practically contain nonforeclosure claims, lest the trial court automatically forfeit its jurisdiction upon the sale.

{¶27} While a confirmation order certainly *could* be final (depending on the circumstances), the specific Confirmation Order here did not wrap up any of the loose ends left open by the Partial Agreed Judgment (nor did it contain Civ.R. 54(B) language). In other words, given the premise that the Partial Agreed Judgment did not divest the court of further jurisdiction, the Confirmation Order does nothing to alter that analysis because it fails to address the unresolved issues (such as attorney's fees).

{¶28} Buttressing our analysis that neither the Partial Agreed Judgment nor the Confirmation Order were sufficiently final to terminate further jurisdiction over the case is our prior Judgment Entry in this case, which we view as more relevant than the Thompson Defendants or the trial court appreciated. In that entry, we dismissed the Thompson Defendants' appeal of the grant of summary judgment to WBCMT on its amended complaint—explaining that the appealed entry did not determine punitive damages, amounts payable under the loan documents, or attorneys fees. Therefore, and consistent with cases like *Roznowski*, 139 Ohio St.3d 299, 2014-Ohio-1984, 11 N.E.3d 1140, and *Miller*, 113 Ohio St.3d 474, 2007-Ohio-2457, 866 N.E.2d 1059, discussed above, we held: "Because the trial court's order did not determine the action and prevent a judgment, it is not a final order." While we

did not there consider the Partial Agreed Judgment or the Confirmation Order, the legal issue appears to us identical and not affected by differences in the case's posture at the time of the respective orders. Given that the summary-judgment order did not generate a final, appealable order, a fortiori, it did not strip the trial court of jurisdiction. The same principles ring true when applied to the Partial Agreed Judgment and the Confirmation Order.

{¶29} Accordingly, for the reasons discussed above, we hold that the amended complaint was proper notwithstanding the Partial Agreed Judgment, Confirmation Order, and the execution thereon; the trial court properly continued to exercise jurisdiction over the case. We therefore sustain WBCMT's second, third, and fourth assignments of error. In any event, as we shall see below, any procedural irregularities or errors above relating to jurisdiction over the case ultimately fall victim to waiver.

C.

{¶30} Even if our journey through Civ.R. 15 and the trial court's continuing jurisdiction over the case above did not convince us that the trial court retained jurisdiction over the amended complaint, we are confident that any defect in the court's exercise of jurisdiction over the case has long since been waived and was not subject to sua sponte resurrection consistent with WBCMT's first assignment of error. In three years of postamendment litigation, the Thompson Defendants never broached any challenge to the trial court's jurisdiction over the case. The perceived issue did not arise until the trial court clued them in to it in 2017.

{¶31} At oral argument, however, the Thompson Defendants maintained, for the first time, that WBCMT waived its waiver argument. Waiver constituted WBCMT's lead argument on appeal, and the Thompson Defendants never countered

that the argument had been waived in their brief. Ordinarily, we will not consider arguments raised for the first time at oral argument, particularly when the party had ample opportunity to explore such issues in its brief. *Andrekyo v. Cincinnati*, 153 Ohio App.3d 108, 2003-Ohio-2759, 791 N.E.2d 1025, ¶ 20 (1st Dist.) ("An issue raised during oral argument for the first time and not assigned as error in an appellate brief is waived."); App.R. 16(B) (applying App.R. 16(A) appellant brief requirements to appellee briefs). We have no occasion to break from that principle today. Nevertheless, upon a review of the record below, keeping in mind the somewhat unusual procedural posture (with the trial court directing specific questions for the parties to answer), we are comfortable that WBCMT raised this point by explaining that the Thompson Defendants had sought dismissal based on personal jurisdiction but no other jurisdictional grounds, and that they failed to claim prejudice by proceeding before the trial court (i.e., submitting to the trial court's jurisdiction over the case).

{¶32} Having concluded that WBCMT did not waive its waiver argument, we turn to it now. It requires a study of the nature and characteristics of jurisdiction over the case—as the briefing, history below, and extant case law all suggest that this subject is prone to confusion and conflation. We hope—notwithstanding the convoluted path winding its way to this appeal—to elucidate this issue.

{¶33} As previewed at the outset of this opinion, "jurisdiction" may connote different things depending on the context. In *Pratts*, 102 Ohio St.3d 81, 2004-Ohio-1980, 806 N.E.2d 992, the Supreme Court of Ohio drew the distinction, in particular, between subject-matter jurisdiction and jurisdiction over the case:

> "Jurisdiction" means "the courts' statutory or constitutional power to
> adjudicate the case." (Emphasis omitted.) *Steel Co. v. Citizens for a*

*Better Environment* (1998), 523 U.S. 83, 89, 118 S.Ct. 1003, 140 L.Ed.2d 210 * * *. The term encompasses jurisdiction over the subject matter and over the person. * * * Because subject-matter jurisdiction goes to the power of the court to adjudicate the merits of a case, it can never be waived and may be challenged at any time. * * * It is a "condition precedent to the court's ability to hear the case. If a court acts without jurisdiction, then any proclamation by that court is void." [*State ex rel. Tubbs Jones v. Suster*, 84 Ohio St.3d 70, 75, 701 N.E.2d 1002 (1998).]

* * *

The term "jurisdiction" is also used when referring to a court's exercise of its jurisdiction over a particular case. * * * " 'The third category of jurisdiction [i.e., jurisdiction over the particular case] encompasses the trial court's authority to determine a specific case within that class of cases that is within its subject matter jurisdiction. It is only when the trial court lacks subject matter jurisdiction that its judgment is void; lack of jurisdiction over the particular case merely renders the judgment voidable.' " [*State v. Parker,* 95 Ohio St.3d 524, 2002-Ohio-2833, 769 N.E.2d 846, ¶ 22 (Cook, J., dissenting.)], quoting [*State v. Swiger*, 125 Ohio App.3d 456, 462, 708 N.E.2d 1033 (9th Dist.1998)]. "Once a tribunal has jurisdiction over both the subject matter of an action and the parties to it, '* * * the right to hear and determine is perfect; and the decision of every question thereafter arising is but the exercise of the jurisdiction thus conferred * * *.' " *State ex rel. Pizza v.*

*Rayford* (1992), 62 Ohio St.3d 382, 384, 582 N.E.2d 992, quoting

*Sheldon's Lessee v. Newton* (1854), 3 Ohio St. 494, 499.

(Citations omitted.) *Pratts* at ¶ 11-12. Succinctly, the *Pratts* court concluded: "Subject-matter jurisdiction is a court's power over a type of case. * * * [O]nce conferred, it remains." *Id.* at ¶ 34.

{¶34} Subsequent Supreme Court cases have returned to this analysis and built upon it. In *In re J.J.*, 111 Ohio St.3d 205, 2006-Ohio-5484, 855 N.E.2d 851, the court determined whether the improper referral of an evidentiary panel to a visiting judge rendered a judgment void. The court characterized this improper referral as a "procedural irregularity" that impacts jurisdiction over the case rather than subject-matter jurisdiction. *Id.* at ¶ 15. Consistent with the distinction between the two doctrines, it held that failure "to preserve the error at the trial level * * * waive[s] all but plain error." *Id.* at ¶ 13. The court even went so far as to enunciate a "duty of a complaining party seeking review [of jurisdiction over the case] to object in the trial court and timely preserve the error for appeal * * *." *Id.* at ¶ 15.

{¶35} In *Barnes v. Univ. Hosps. of Cleveland*, 119 Ohio St.3d 173, 2008-Ohio-3344, 893 N.E.2d 142, the court considered whether a retired, appointed judge had authority to hear the case in issue. Like in *J.J.*, the Supreme Court rejected the premise that the appellant challenged the court's subject-matter jurisdiction; therefore, it analyzed the exercise of jurisdiction over the case and concluded that the appellant "had a duty to object in the trial court * * *. Since [appellant] did not object, the error, if any, has been waived." *Id.* at ¶ 27.

{¶36} *State ex rel. Bell v. Pfeiffer*, 10th Dist. Franklin No. 10AP-490, 2011-Ohio-2539, *aff'd*, 131 Ohio St.3d 114, 2012-Ohio-54, 961 N.E.2d 181, concerned the propriety of a transfer of a case from one judge to another. Again, the court

19

characterized the alleged error as a "procedural irregularity" and not an error of subject-matter jurisdiction. *Id.* at ¶ 18-19. Of particular note, the opinion remarked that "consideration of the procedural posture of the Franklin County action is relevant to determine when, if ever, the realtor objected to [the alleged improper jurisdiction over the case]." *Id.* at ¶ 18. *See Cosgrove v. Omni Manor*, 2016-Ohio-8481, 78 N.E.3d 223, ¶ 53 (7th Dist.) (employer argued that court did not have jurisdiction to consider a particular medical condition not raised before the administrative system; court held employer had forfeited nonsubject-matter jurisdictional argument by not raising). In affirming the Tenth District's decision, the Supreme Court specifically distinguished the procedural irregularities asserted in that case from a subject-matter-jurisdictional problem. *State ex rel. Bell v. Pfeiffer*, 131 Ohio St.3d 114, 2012-Ohio-54, 961 N.E.2d 181, ¶ 19-20. These cases help flesh out the distinction between jurisdiction over the case and subject-matter jurisdiction, and determine that objections to the former must be timely raised to be preserved. Our own court has recently touched on this issue in a different context—highlighting the distinction between the power to hear a custody case (subject-matter jurisdiction) and the exercise of such power where the judgments of another state's courts and applicable federal law affected the rights of the particular parties (jurisdiction over the case). *In re N.D.*, 1st Dist. Hamilton No. C-180441, 2019-Ohio-3635, ¶ 16-17.

{¶37} The term "procedural irregularity," employed by the authority above, seems uniquely appropriate to the situation we encounter. Indeed, the Thompson Defendants even described the situation below in their appellate brief as a "procedural irregularity." Supreme Court authority on procedural irregularities affecting jurisdiction over the case confirms that not only does such an irregularly

20

result in entries that are voidable as opposed to void; the irregularity is also waivable. *See J.J.*, 111 Ohio St.3d 205, 2006-Ohio-5484, 855 N.E.2d 851, at ¶ 17 ("A party may timely object to [the procedural irregularity], but failure to timely enter such an objection waives the procedural error."). Perhaps cognizant of their waiver problems, the Thompson Defendants insist that jurisdiction over the case is of the same ilk as subject-matter jurisdiction, and thus its defects can never be waived. But this proposition cannot be squared with the Supreme Court's repeated clarifications of the distinction between the two concepts. *J.J.* and *Barnes* both directly refuted that principle, and the Thompson Defendants prove unable to reconcile their argument with those cases. Consistent with that authority, we hold that jurisdiction over the case can be waived if not timely raised by the parties.

{¶38} In addition to being mandated by the Supreme Court, this rule makes practical sense. Otherwise, if a party harbored doubts about the court's jurisdiction over the case, it could lie in wait—and see how the litigation unfolds before making a call on whether to challenge jurisdiction. If it prevailed in the case, it could then tuck the jurisdictional objection in its pocket and congratulate itself for the wisdom of proceeding in court. But if it lost, it could effectively try to secure a mulligan and litigate the entire case over again in the hopes of obtaining a more favorable outcome. Needless to say, we cannot countenance such a result.

{¶39} We need not decide today the precise contours of what it means to "timely" raise the defense of lack of jurisdiction over the case (but in most cases, we would expect that to be an affirmative defense in an answer and/or the subject of a motion to dismiss, or raised at the point in the proceedings at which the "procedural irregularity" arose), because the Thompson Defendants do not claim that they preserved the point. *See J.J.* at ¶ 15 ("These cases establish the duty of a complaining

21

party seeking review to object in the trial court and timely preserve the error for appeal * * *.").  They never raised this at any point prior to their initial appeal, and thus they have waived the defense.  *See Paulus v. Beck Energy Corp.*, 2017-Ohio-5716, 94 N.E.3d 73, ¶ 29 (7th Dist.) ("This court has ruled a lack of jurisdiction over a particular case (as opposed to subject matter jurisdiction) cannot be raised on the appeal if the defendant did not proceed on such a defense before or during trial after raising it in the answer."); *Donovan v. Templeton*, 2d Dist. Montgomery No. 16204, 1997 WL 337657, *3 (May 19, 1997) ("The irregularity which Vanessa Lynn Templeton now claims * * * could have been raised in a motion to dismiss or in a responsive pleading filed in that divorce proceeding. Civ.R. 12(B)(1). Vanessa Lynn Templeton failed to do so. Therefore, she is deemed to have waived the irregularity."); *Cosgrove*, 2016-Ohio-8481, 78 N.E.3d 223, at ¶ 45-52 (holding that a jurisdiction-over-the-case argument, even where raised in the answer, was waived when it was not otherwise prosecuted).

{¶40}  The only loose end remaining, therefore, is whether—notwithstanding the Thompson Defendants' waiver—the trial court could sua sponte raise the point three years after the "procedural irregularity" occurred.  Looking at Ohio case law on personal jurisdiction as a guide, we answer that question in the negative.

{¶41} Jurisdiction over the case is similar to personal jurisdiction because defects in either type of jurisdiction result in voidable—not void—judgments and are waivable.  And it is well-settled that personal jurisdiction should not be raised sua sponte when the parties have waived the point.  *See, e.g., Brislin v. Albert*, 9th Dist. Summit No. 27052, 2014-Ohio-3406 (reversing trial court's sua sponte dismissal for lack of personal jurisdiction because the defendant waived the objection); *Snyder Computer Sys., Inc. v. Stives*, 175 Ohio App.3d 653, 2008-Ohio-1192, 888 N.E.2d

1117, ¶ 16 (7th Dist.) ("[O]nce Stives waived personal jurisdiction, it was procedurally incorrect for the trial court to raise it on its own motion."); *D'Amore v. Matthews*, 193 Ohio App.3d 575, 2011-Ohio-2853, 952 N.E.2d 1212, ¶ 34 (12th Dist.) ("[O]nce the lack of personal jurisdiction was waived, the trial court could not sua sponte address the issue of personal jurisdiction in its judgment entry."); *Weiss, Inc. v. Pascal*, 8th Dist. Cuyahoga No. 82565, 2003-Ohio-5824. The reason for this restriction is consistent with its character: "While Rule 12(h)(3) preserves and recognizes the court's time-honored obligation, even sua sponte, to dismiss any action over which it has no subject-matter jurisdiction, the rule does not accord similar authority where the court's personal jurisdiction over a party has not been challenged." *Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697, 701 (6th Cir.1978) (Ohio's Civ.R. 12(H)(3) contains a parallel directive relative to subject-matter jurisdiction.).

{¶42} We see no reason to fashion a different result here. While we did not locate controlling authority on this point relative to jurisdiction over the case, the characteristics that it shares with personal jurisdiction satisfy us that it is the duty of the affected party to raise it, and it should not be raised by the court sua sponte after waiver by the parties. It is beyond question that a court has inherent authority—even responsibility—to raise subject-matter jurisdiction sua sponte. But subject-matter jurisdiction is in a class of its own; as noted in *Pratts*, it "is a court's power over a *type of case.*" (Emphasis added.) *Pratts*, 102 Ohio St.3d 81, 2004-Ohio-1980, 806 N.E.2d 992, at ¶ 34. The trial court unquestionably had the power to hear the type of case presented by the amended complaint; the issue, instead, relates instead to an alleged "improp[er] exercise[]" of subject-matter jurisdiction "once conferred" and the procedural mechanism by which it arrived at bar. *Id.* at ¶ 10.

{¶43} Although no Ohio appellate court has specifically addressed this point, our colleagues across the river at the Kentucky Court of Appeals—applying similar jurisdictional principles as recognized in Ohio—rejected an attempt to sua sponte raise the issue of a lack of jurisdiction over the case. *See Basin Energy Co. v. Howard*, 447 S.W.3d 179 (Ky.App.2014). That court held as follows on this point: "[W]here the parties have failed to timely raise particular-case jurisdictional challenges, a reviewing administrative body or court must refrain from interjecting itself into the litigation by belatedly asserting those issues *sua sponte*. *Harrison v. Leach*, 323 S.W.3d 702, 703 (Ky.2010)." *Id.* at 187. We find this authority persuasive and consistent with the Ohio cases on personal jurisdiction cited above.

{¶44} The reasons for requiring the timely raising of a jurisdictional defense like this are manifold, and this case illustrates the point. We obligate parties to raise these defenses to avoid the untold wastes concomitant with eleventh-hour jurisdictional epiphanies. *See Detroit, Toledo & Ironton Ry. Co. v. Maxine's Potato Service, Inc.*, 13 Ohio App.3d 157, 161, 468 N.E.2d 361 (2d Dist.1983) (holding lack-of-personal-jurisdiction defense was waived "[i]n accordance with the policy of encouraging diligence in challenging personal jurisdiction"); *T.S. Expediting Servs., Inc. v. Mexican Industries, Inc.*, 6th Dist. Wood No. WD-01-060, 2002-Ohio-2268, ¶ 24 (favorably citing *Detroit, Toledo & Ironton Ry. Co.*). Here, the trial court's decision would have erased three years of litigation, which could have been avoided if the Thompson Defendants had timely sounded the jurisdictional alarm.

{¶45} We also point out that this rule does not operate to diminish the authority of trial courts to police their proceedings. The trial court here could have rejected the effort to amend the complaint if it found, in its discretion, the belated amendment improper. In other words, courts can and should take appropriate

measures to avoid "procedural irregularities." But when they transpire, it is incumbent upon the parties to timely raise the issue to avoid forfeiture. To hold otherwise would risk a tremendous waste of judicial and party resources, as well as open the doors for collateral attacks down the road once someone realizes that they hold the thread to unravel an adverse result.

III.

{¶46} For the reasons explained above, we sustain each of WBCMT's assignments of error, reverse the decision of the trial court, and remand for further proceedings consistent with this opinion.

Judgment reversed and cause remanded.

**WINKLER, J.**, concurs.
**ZAYAS, P. J.**, dissents.

**ZAYAS, P.J.**, dissenting.

{¶47} I must respectfully dissent. WBCMT's amended complaint—which named entirely new parties and new claims, *replacing* all of the original defendants and all of the claims against them, after the entry of a final judgment—does not comport with Civ.R. 15. I would hold that final judgments were entered with the Partial Agreed Judgment and Decree of Foreclosure ("Partial Agreed Judgment") and Entry Confirming Sale and Ordering Deed ("Confirmation Order"), which precluded WBCMT's move to amend; that it was within the trial court's inherent authority to vacate as void the entries made pursuant to that improperly amended complaint; and that WBCMT's waiver argument should not be addressed because it was waived by WBCMT's failure to raise it before the trial court. Therefore, I would affirm the judgment of the trial court.

{¶48} The majority reverses this case by determining that, because there was not a final judgment, WBCMT's complaint was properly amended, and the trial court

maintained jurisdiction over the case such that it should not have dismissed the amended complaint or vacated the entries that followed it. After coming to this conclusion, the majority nevertheless proceeds to a discussion of the Thompson Defendants' supposed waiver of jurisdiction over the case. This discussion is dicta, or advisory, as the majority already determined that there was no issue with the trial court's jurisdiction over the case following a properly amended complaint. *See Nelnet, Inc. v. Rauch*, 10th Dist. Franklin No. 18AP-555, 2019-Ohio-561, ¶ 10 (quoting *Black's Law Dictionary* 1240 (10th Ed.2014) for the definition of "obiter dictum" as "[a] judicial comment made while delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential."). It is well-settled precedent that a reviewing court should not indulge in advisory opinions. *See, e.g., State ex rel. White v. Kilbane Koch*, 96 Ohio St.3d 395, 2002-Ohio-4848, 775 N.E.2d 508, ¶ 18. Accordingly, I limit my discussion of waiver to the assignment of error as presented by WBCMT in light of my determination that the Partial Agreed Judgment and Confirmation Order are final judgments. *See* App.R. 12(A) (requiring a determination of an appeal on the assignments of error). For ease of discussion, WBCMT's four assignments of error will be addressed out of order.

## I.     The Trial Court Rightly Dismissed WBCMT's Amended Complaint

{¶49} In its second, third, and fourth assignments of error, WBCMT argues that the trial court appropriately granted its motion to amend its original complaint pursuant to Civ.R. 15 and erred in later determining that that decision was improper.

{¶50} To be clear, in the case before us WBCMT filed an amended complaint that replaced all of the original defendants and all of the claims against them.[4] Quite simply, Civ.R. 15 does not support entirely abandoning original parties and the original claims—after the entry of final judgment or otherwise. Establishing such a practice would enable cunning litigants to circumvent procedural defenses like statutes of limitations by using a complaint as a shell filing in which they could insert almost whoever and whatever they like.[5] Accordingly, the trial court was within its authority to dismiss WBCMT's amended complaint as improperly granted after a final judgment.

## A.    Final Judgment was Entered Prior to WBCMT's Move to Amend

{¶51} In its second assignment of error, WBCMT asserts that the trial court erred in determining that it did not have jurisdiction over the case, arguing, in part, that no final judgment had been entered. The trial court concluded otherwise—that it lacked jurisdiction to grant leave to amend the complaint because it had in fact entered final judgment. For the following reasons, I agree with the trial court.

---

[4] While WBCMT's original complaint and its amended complaint named various "John Doe" defendants, these defendants are effectively different parties because the original unnamed defendants were never served and were thus never parties to the lawsuit. *See* Civ.R. 3(A) ("A civil action is commenced by filing a complaint with the court, if service is obtained within one year from such filing upon a named defendant * * *."); *LaNeve v. Atlas Recycling, Inc.*, 119 Ohio St.3d 324, 2008-Ohio-3921, 894 N.E.2d 25 (failing to properly attempt service on "John Doe" defendants meant that court lacked personal jurisdiction over said defendants); *Billi v. Moyse-Morgan Ents. Inc.*, 9th Dist. Lorain No. 12CA010260, 2013-Ohio-1214, ¶ 9 (because the plaintiff "did not perfect service on the unnamed defendants within one year as required by Civ.R. 3(A), the action never commenced against them.").

[5] The majority mentions that this concern is alleviated by the Civ.R. 15 standard for amending pleadings—which states that amendment is not proper where there is a showing of bad faith, undue delay or undue prejudice to the opposing party. What the majority overlooks is that their decision gives litigants the authority to turn an amended pleading into a shell filing. In this case, WBCMT purported to amend its pleading to *add* the Thompson Defendants, but filed an amended complaint that named *only* the Thompson Defendants. The majority's decision signals that, as long as a motion to amend appears to comport with Civ.R. 15, all is well, and the subsequently-filed amended complaint can be entirely different—after all, as the majority concludes, the trial court does not have the authority to vacate the amended pleading anyway.

{¶52} As the majority discussed, WBCMT initially filed a two-count complaint for breach of contract and foreclosure against the Borrowers. Foreclosure cases are unique in that they routinely generate two final appealable orders—a decree of foreclosure and the order confirming the sale of the property. Relying on *CitiMortgage, Inc. v. Roznowski*, 139 Ohio St.3d 299, 2014-Ohio-1984, 11 N.E.3d 1140, the trial court determined that the Partial Agreed Judgment and the Confirmation Order were independent final judgments. *Roznowski* settled conflicting authority on final judgments in foreclosure cases—explaining that a final judgment is not entered with respect to a foreclosure decree until each party's rights and liabilities are set forth even though there may remain the future ministerial task of calculating final amounts due, and that a final judgment is not entered on an order confirming the property sale unless the order sets forth the specific damage amount and distributes the funds accordingly. *Id.* at ¶ 24.

{¶53} In this case, the Partial Agreed Judgment satisfied the criteria for a final judgment for a foreclosure decree by granting a judgment in favor of WBCMT and against the Borrowers for the amount due on the underlying note, including costs and expenses related thereto; it identified the priority of any liens against the collateral securing the note; and foreclosed the mortgage and directed the sale of the property.

{¶54} The Partial Agreed Judgment also included Civ.R. 54(B) language, indicating that "there is no just reason for delay in entering a final judgment * * * and final judgment is entered against the Borrowers." *See* Civ.R. 54(B) ("the court may enter final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay"); *see also*

*Parker v. Allstate Property & Cas. Ins. Co.*, 7th Dist. Belmont No. 12 BE 2, 2012-Ohio-6278, ¶ 29.

{¶55} Moreover, the Partial Agreed Judgment entered judgment in the amount of the "Indebtedness," which is defined in the entry to specifically include "attorneys'/professional fees and costs, with interest, default interest, late fees and costs continuing to accrue on the unpaid balance." While some courts have previously held that where attorney fees are awarded but the amount is not specified, the foreclosure order is not final and appealable, *Roznowski* settled this issue by concluding that "[a] judgment decree in foreclosure that allows as part of recoverable damages unspecified amounts advanced by the mortgagee for inspections, appraisals, property protection, and maintenance is a final, appealable order pursuant to R.C. 2505.02(B)(1)." *Roznowski*, 139 Ohio St.3d 299, 2014-Ohio-1984, 11 N.E.3d 1140, at paragraph one of the syllabus. The court emphasized that "for a judgment decree in foreclosure to constitute a final order, it must address the rights of all lienholders and the responsibilities of the mortgagor." *Id.* at ¶ 20. The foreclosure order in the case before us did address the rights of the lienholders and the Thompson Defendants' responsibilities. Thus, the order was final on the question of the entitlement to attorney fees, even though the amount had not been set. *See Mann v. Resolution T Co.*, 2d Dist. Miami No. 2014-CA-5, 2014-Ohio-2451, ¶ 27-28; *see also Farmers State Bank v. Sponaugle*, Slip Opinion No. 2019-Ohio-2518, ¶ 29.

{¶56} Any doubts as to finality were also resolved by the fact that the Partial Agreed Judgment is a judgment entered by consent. "A judgment entry to which the parties voluntarily agree and/or consent is essentially a contract between the parties." *Deutsche Bank Natl. Tr. Co. Americas v. Weber*, 12th Dist. Butler No.

CA2009-10-264, 2010-Ohio-1630, ¶ 13, citing *Ohio State Med. Bd. v. Zwick*, 59 Ohio App.2d 133, 139, 392 N.E.2d 1276 (9th Dist.1978); *Spercel v. Sterling Industries, Inc.*, 31 Ohio St.2d 36, 39, 285 N.E.2d 324 (1972). "As such, the parties are bound by its terms." *Deutsche Bank* at ¶ 13. Additionally, a party to a judgment entered by consent may not appeal said judgment unless it explicitly reserves the right to appeal. *Id.* at ¶ 14. "The purpose of a consent judgment is to resolve a dispute without further litigation, and so would be defeated or at least impaired by an appeal. The presumption, therefore, is that the consent operates as a waiver of the right to appeal. It is because the parties should not be left guessing about the finality and hence efficacy of the settlement that any reservation of a right to appeal should be explicit." (Internal quotations omitted.) *Deutsche Bank* at ¶ 14. In this case, the agreed judgment by its terms—one of which expressly states that the Borrowers waived their right to appeal—indicates that the parties had settled their claims, including but not limited to the claim for attorney fees. Moreover, in another entry of the court, entered shortly before the Partial Agreed Judgment and journalizing the results of a status conference, the court noted that "Counsel for Defendants [Borrowers] further explained that his law firm is holding in escrow the funds to pay the proposed settlement and the agreed upon proposed attorney fees which remain unpaid." Thus, neither party was anticipating an untold amount of attorney fees which might require subsequent and contentious litigation; they were entering an agreed judgment that each considered to be final.

{¶57} It is for this reason that I would find *Chatfield and Woods Sack Co., Inc. v. Nusekabel*, 1st Dist. Hamilton No. C-980315, 1999 WL 960782 (Oct. 22, 1999)—cited by WBCMT and the majority for the proposition that an entry of foreclosure that leaves undefined protection costs and legal fees is not a final order—

to be inapplicable. Besides having been decided well before *Roznowski, Chatfield* did not involve an agreed judgment wherein the entitlement to money damages was specified by a term within the entry. Likewise, I find the majority's reliance upon the Judgment Entry in this case—dismissing the appeal of the grant of summary judgment to WBCMT on its amended complaint—unpersuasive. The summary judgment did not involve a foreclosure and was not a judgment entered into by consent—it involved a complaint for conversion, fraudulent conveyance, unjust enrichment and breach of contract, and awarded an unspecified amount of punitive damages. The legal issues are not comparable.

{¶58} Furthermore, as the trial court noted, WBCMT took actions following the foreclosure decree in recognition of the Partial Agreed Judgment as a final judgment. WBCMT proceeded with execution of the Partial Agreed Judgment through the filing of the Precipe for Order of Sale, which could only occur if there existed a judgment lien against the real estate—which in turn could only exist if the Partial Agreed Judgment was a final judgment. "[A] trial court cannot execute on a judgment that is not final and appealable." *Farmers State Bank v. Sponaugle*, 2d Dist. Darke No. 2016-CA-4, 2017-Ohio-4322, 92 N.E.3d 355, ¶ 26, *modified on reconsideration*, 2d Dist. Darke No. 2016-CA-4, 2017-Ohio-7744, ¶ 26, *cause dismissed*, 152 Ohio St.3d 1403, 2018-Ohio-723, 92 N.E.3d 876, *appeal allowed in part*, 152 Ohio St.3d 1405, 2018-Ohio-723, 92 N.E.3d 878, citing *Franklin Mgt. Industries, Inc. v. Motorcars Infiniti, Inc.*, 8th Dist. Cuyahoga No. 93630, 2010-Ohio-1871, ¶ 14.

{¶59} Like the Partial Agreed Judgment, the Confirmation Order also satisfied the criteria for a final judgment. "The confirmation process is an ancillary one in which the issues present are limited to whether the sale proceedings

conformed to law." *Roznowski,* 139 Ohio St.3d 299, 2014-Ohio-1984, 11 N.E.3d 1140, at ¶ 40. At this stage, the parties are limited to challenging "the confirmation of the sale itself, including computation of the final total owed by the mortgagor, accrued interest, and actual amounts advanced by the mortgagee for inspections, appraisals, property protection, and maintenance." *Id.* "The issues appealed from confirmation are wholly distinct from the issues appealed from the order of foreclosure. In other words, if the parties appeal the confirmation proceedings, they do not get a second bite of the apple, but a first bite of a different fruit." *Id.* Here, the order confirming the property sale indicated that the property had been sold at a sheriff's sale on April 17, 2014, and the sale was made in conformance with the law and was thus a final judgment.

{¶60} The majority disagrees, citing cases in which the order confirming the property sale was not final because it did not contain a Civ.R. 54(B) certification. Those cases are inapplicable here because no other claims remained pending in the trial court. *See JP Morgan Chase Bank v. Dewine*, 3d Dist. Logan No. 8-08-20, 2009-Ohio-87, ¶ 11 (an issue of priority among lienholders was still pending); *Brake v. Keegan*, 6th Dist. Sandusky No. S-17-034, 2018-Ohio-3979, ¶ 9 (a claim for damages and a counterclaim were still pending); *Whipps v. Ryan*, 10th Dist. Franklin No. 12AP-509, 2013-Ohio-4334, ¶ 30 (at least one cross-claim was still pending). As discussed above, the Partial Agreed Judgment resolved all of the other pending claims. Therefore, the Confirmation Order did not need a Civ.R. 54(B) certification. *See* Civ.R. 54(B); *see also NBD Mtge. Co. v. Marzocco*, 2d Dist. Montgomery No. 18824, 2001 WL 1346030 (Nov. 2, 2001). Because the confirmation of a sheriff's sale is a special proceeding and no other pending claims remained, it is a final appealable order under R.C. 2505.02(B)(2). *Emerson Tool,*

*L.L.C. v. Emerson Family Ltd. Partnership*, 9th Dist. Summit No. 24673, 2009-Ohio-6617, ¶ 13, citing *Metro. Bank & Trust Co. v. Roth*, 9th Dist. Summit No. 21174, 2003-Ohio-1138, ¶ 12.

{¶61} WBCMT attempts to distinguish *Roznowski* and other case law by asserting that there was more to the case after the foreclosure decree and the order of sale—namely, the unspecified amount of attorney fees and an unaddressed claim for breach of contract. This argument is unpersuasive in light of the preceding analysis, and disingenuous, because WBCMT admits in its memorandum in support of its motion to amend and in its amended complaint that a final judgment and settlement agreement had been entered into with the Borrowers at the time of filing—disposing of the claims for breach of contract and attorneys' fees. In its recitation of facts in its memorandum in support of its motion to amend, WBCMT states as follows:

> On August 22, 2013, the Receiver filed the Motion to Compel Turnover of Funds by Defendants (the "Turnover Motion"). On November 8, 2013, the Court issued the Agreed Entry ordering the Borrowers to turn over the funds held by Breakwater to Borrowers' counsel's IOLTA account. As a result of the Court's Order, $696,330.42 was returned to the Borrowers from Breakwater.

> Subsequently, the Plaintiff and Borrowers entered into that certain Settlement and Release Agreement (the "Settlement Agreement") and Partial Agreed Judgment and Decree of Foreclosure ("Agreed Judgment").

> Based on the terms of the Settlement Agreement which along with the Agreed Judgment Entry, the Borrowers agreed to return

33

$650,000 to the Plaintiff, and **settled the Plaintiff's claims against the Borrowers in this litigation.**

Likewise, WBCMT's subsequently-filed amended complaint states as a follows:

13. On January 16, 2014, Borrowers and Plaintiff filed the Partial Agreed Judgment and Decree of Foreclosure (the "Partial Agreed Judgment") **whereby the Borrowers agreed to a judgment for breach of contract and foreclosure of the Real Estate and Collateral**.

14. Contemporaneously therewith, Borrowers and Plaintiff had entered into that certain Settlement and Release Agreement (the "Settlement Agreement") whereby the Borrowers agreed to return to the Plaintiff $650,000 of the Transferred Funds (hereinafter defined), **which along with the Partial Agreed Judgment, resolved the issues between Borrowers and Plaintiff.**

{¶62} Accordingly, the Partial Agreed Judgment and Confirmation Order were final judgments in this case.

**B.     Final Judgment Precluded WBCMT's Amended Complaint**

{¶63} In its third and fourth assignments of error, WBCMT argues that even if the Partial Agreed Judgment and Confirmation Order were final appealable orders, the trial court erred in determining that it did not have jurisdiction to grant leave for WBCMT to amend its complaint because Civ.R. 15 permits amended pleadings even after final judgment. The trial court disagreed, concluding that while Civ.R. 15(B) allows for amended pleadings post-judgment, the civil rule is limited such that it does not permit WBCMT's assertion of entirely new claims against entities and

34

individuals who were not original parties after final judgment. For the following reasons, I agree with the trial court.

{¶64} The trial court determined that this case came to a conclusion upon the entry of the Partial Agreed Judgment and the Confirmation Order, final judgments which divested the trial court of jurisdiction save collateral matters related to those final judgments. This determination—that a court's jurisdiction continues until the final judgment on the merits of a dispute—is supported by the general principle that a court's jurisdiction does not continue indefinitely and "that final judgments are meant to be just that—final." *Allstate Ins. Co. v. Witta*, 9th Dist. Summit No. 25738, 2011-Ohio-6068, ¶ 7, citing *Ohio Pyro, Inc. v. Ohio Dept. of Commerce*, 115 Ohio St.3d 375, 875 N.E.2d 550, 2007-Ohio-5024, ¶ 22; *see State v. Stefen*, 70 Ohio St.3d 399, 409, 639 N.E.2d 67 (1994) ("The purpose of a court is to resolve controversies, not to prolong them.").

{¶65} The Ohio Rules of Civil Procedure also support this principle. *See* Civ.R. 1(B) ("These rules shall be construed and applied to effect just results by eliminating delay, unnecessary expense and all other impediments to the expeditious administration of justice."). Ergo, Civ.R. 15 *does not* permit the indefinite continuation of a lawsuit through amended pleadings. *See, e.g., Stroud v. Four E Properties, Inc.*, 1st Dist. Hamilton No. C-170215, 2018-Ohio-1910, ¶ 18 (describing a Civ.R. 15 motion for leave to file an amended complaint and the trial court's ruling on it after final judgment as a legal nullity).

{¶66} Civ.R. 15(B)—cited by the majority to allow "belated amendments"— concerns the amendment of pleadings to conform to the evidence, and states:

> When issues not raised by the pleadings are tried by express or implied
>
> consent of the parties, they shall be treated in all respects as if they had

35

been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment. Failure to amend as provided herein does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.

{¶67} "The rule expresses a liberal policy toward the allowance of amendments." *Hall v. Bunn*, 11 Ohio St.3d 118, 120, 464 N.E.2d 516 (1984), citing *Burton v. Middletown*, 4 Ohio App.3d 114, 120, 446 N.E.2d 793 (12th Dist.1982). It " 'was promulgated to provide the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties.' " *Hall* at 120, quoting *Hardin v. Manitowoc-Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir.1982).

{¶68} There are two types of amendments provided for under Civ.R. 15(B). *See Hall*. "The first applies when the parties have expressly or impliedly consented to the trial of issues not contained in the pleadings." *Hall* at 121; *see State ex rel. Evans v. Bainbridge Twp. Trustees*, 5 Ohio St.3d 41, 448 N.E.2d 1159 (1983) (explaining the precise circumstances under which this occurs). The test of consent is whether an opposing party had a fair opportunity to defend against the unpleaded

claim and whether the party could have presented additional evidence had it known sooner the substance of the amendment. *See Bainbridge Twp. Trustees* at 45-46.

{¶69} "A second type of amendment may arise where there is an objection to the evidence offered on grounds that it is not within the issues framed by the pleadings." *Hall* at 121 (explaining the circumstances under which this situation occurs). The court may allow the pleadings to be amended if: "(1) the presentation of the case's merits will be subserved thereby, and (2) the objecting party does not satisfy the court that admission of the evidence would prejudice him in maintaining his case upon the merits." *Id.*

{¶70} Neither one of the two types of amendments provided for under the rule is presented by WBCMT's amended complaint because the amended complaint resulted in *entirely new claims against all new parties*. It is a non sequitur to suggest that Civ.R. 15(B) could apply to the facts of this case. To illustrate the absurdity, the Borrowers could not have impliedly consented to issues not contained in the original pleading to permit WBCMT's amended complaint because the amended complaint alleges no claims against them and they are no longer listed as parties to the lawsuit. And, the new parties, the Thompson Defendants, could not have impliedly consented to issues not contained in the original pleading to permit WBCMT's amended complaint because they were never involved in the earlier litigation. Similarly, with regard to the second type of amendment, the Borrowers could not have objected to evidence not within the issues framed by the original pleadings to permit WBCMT's amended complaint because the amended complaint alleged entirely new causes of action against new defendants who were never served with the original complaint or joined in the lawsuit. Suffice it to say Civ.R. 15(B) did

not permit WBCMT's amended complaint, and neither did any of the other Ohio Rules of Civil Procedure.

{¶71} "It is well settled that a trial court loses jurisdiction over a case after issuing the final judgment that resolves all claims before it." *In re Criminal Charges Against Groves*, 4th Dist. Hocking No. 17CA9, 2018-Ohio-1406, ¶ 22, citing *Palmer v. Bowers*, 9th Dist. Lorain No. 15CA010836, 2017-Ohio-355, ¶ 11; *see Fiore v. Larger*, 2d Dist. Montgomery Nos. 05-CV-6054 and 07-CV-8371, 2009-Ohio-5408, ¶ 36. Accordingly, "after a case has ended, the trial court may not continue to act, absent specific authority as prescribed by the Ohio Rules of Civil Procedure." *In re Criminal Charges*, citing *Allstate Ins. Co. v. Witta*, 9th Dist. Summit No. 25738, 2011-Ohio-6068, ¶ 8. "If a trial court does act outside of the specific post-judgment motions set forth in the civil rules, its ruling will be considered void." *In re Criminal Charges*, citing *Pitts v. Ohio Dept. of Transp.*, 67 Ohio St.2d 378, 380, 423 N.E.2d 1105 (1981); *see Kitson v. Gordon Food Serv.*, 9th Dist. Summit No. 15CA0078-M, 2016-Ohio-7079, ¶ 7.

{¶72} In the case before us, the trial court dismissed without prejudice an amended complaint for want of jurisdiction after the entry of two final judgments, and vacated all of the interlocutory entries made pursuant to that amended complaint. Thus, the trial court effectively vacated its void rulings, which it had the inherent authority to do. *See Lingo v. State*, 138 Ohio St.3d 427, 2014-Ohio-1052, 7 N.E.3d 1188, ¶ 48 ("A court has the inherent authority to vacate its own void judgments.").

## II. WBCMT Waived Its Waiver Argument

{¶73} In its first assignment of error, WBCMT argues that "the trial court erred in *sua sponte* dismissing on non-existent jurisdictional grounds that the

38

Thompson Defendants had already waived." WBCMT's premise is that the Thompson Defendants definitively waived any argument that the trial court did not have jurisdiction over the case. However, WBCMT waived this waiver argument by not asserting it clearly or timely. *See The Fifth Third Bank v. Crosley*, 1st Dist. Hamilton No. C-961108, 1997 WL 770159, \*2 (Dec. 12, 1997) (errors not brought to the attention of the trial court by objection or otherwise, are waived and may not be raised upon appeal).

{¶74} The majority initially counters that the Thompson Defendants never asserted prior to oral argument that WBCMT had waived its waiver argument. In support, the majority notes that we do not consider arguments raised for the first time at oral argument, citing *Andrekyo v. Cincinnati*, 153 Ohio App.3d 108, 2003-Ohio-2759, 791 N.E.2d 1025, ¶ 20 (1st Dist.). While *Andrekyo* holds that an appellant cannot raise in oral argument an issue that was not raised in its appellate brief—consistent with the appellate rules, the majority falters in applying *Andrekyo* to the oral response of the Thompson Defendants, the appellees. It is irrelevant that the Thompson Defendants did not include this argument in their appellate brief— that WBCMT had waived its waiver argument by not asserting the issue in the trial court. While they could have raised it, they were not required to, as it is ultimately the duty of the appellate court to review the record and discern whether an error about which a party is complaining could have been called out and corrected by the trial court. *See* App.R. 12(A); *see, e.g., Pitcher v. Waldman*, 1st Dist. Hamilton No. C-160245, 2016-Ohio-5491, ¶ 13.

{¶75} The majority then inexplicably takes arguments out of context to piece together a waiver argument on behalf of WBCMT. In this case, the trial court sua sponte ordered supplemental briefing on its continuing jurisdiction over the case

after an appeal was dismissed from our court and the case was reassigned to a new judge. The trial court's order was issued within three months of the new judge's assignment. The Thompson Defendants were the first to file their supplemental brief, which was followed by WBCMT's supplemental brief. The Thompson Defendants then filed a reply to WBCMT's supplemental brief, which was followed by WBCMT's memorandum in response to the Thompson Defendants' reply. The arguments the majority relies upon are presented within WBCMT's final filing—a response to a reply in response to the trial court's order for supplemental briefing.

{¶76} Within its order directing supplemental briefing on the scope of the court's jurisdiction, the trial court asked the parties to answer, among other things, "what is the legal basis and authority for the Court to continue to exercise jurisdiction in this case." Perhaps more significantly, the court also stated that "[i]n the interest affording the parties notice of the Court's concern over its continued jurisdiction, as well as to enable the Court to make a fully-informed decision on the issues identified above and *any other issues related thereto that the parties may wish to address*, the Court is requesting supplemental briefing from the parties on the foregoing." (Emphasis added.) Thus, WBCMT had ample opportunity to argue that questioning the trial court's jurisdiction over the case was waived. They simply failed to argue it.

{¶77} Instead, WBCMT argued that the Thompson Defendants were not prejudiced by WBCMT's amended complaint in the limited context that its motion to amend was granted in accordance with Civ.R. 15. Under the heading, "There Has Been No Prejudice to the Thompson Defendants," WBCMT argues that the Thompson Defendants were not prejudiced by the amended complaint because they were afforded adequate notice and opportunity to be heard. Citing to cases in which

40

there was no prejudice to an opposing party where a pleading had been amended pursuant to Civ.R. 15, WBCMT's only mention of the word "waiver" occurs in a footnote citation to a case where the claim of prejudice was waived where a party fully participated in the proceedings.

{¶78} Yet, the majority is "comfortable" that WBCMT's Civ.R. 15 prejudice argument also applies to an assertion that the Thompson Defendants waived the issue of the trial court's jurisdiction over the case. Pursuant to the liberal pleading requirements of Civ.R. 8, if a party raises a generic defense in its pleadings, "it is acceptable to make fair interpolations of more specific defenses that might naturally be included in that defense." *Reed v. Multi-Cty. Juvenile Sys.*, 7th Dist. Columbiana No. 09 CO 27, 2010-Ohio-6602, ¶ 47, citing *Gallagher v. Cleveland Browns Football Co.*, 74 Ohio St.3d 427, 432-433, 659 N.E.2d 1232 (1996). "However, it is unacceptable to extrapolate from a defendant's affirmative defenses to include something that is simply not stated in the pleadings." (Internal citations omitted.) *Id.* Applying such a practice to effectively save arguments from waiver contravenes precedent, the appellate rules, and the role of an appellate court as a reviewing body.

{¶79} The majority's discussion of waiver is troubling in light of the fact that this assignment of error is mooted by the majority's determination that the Partial Agreed Judgment and Confirmation Order are not final appealable orders and that the amended complaint was proper under Civ.R. 15. But, not only is this discussion of jurisdiction over the case superfluous, it is dicta relying upon dicta. In the first Kentucky case cited by the majority, *Basin Energy Co. v. Howard*, 447 S.W.3d 179 (Ky.App.2014), the issue on appeal pertained to a dismissal by the lower court for lack of subject-matter jurisdiction, which cannot be waived. Nonetheless, to contrast subject-matter jurisdiction, the Kentucky court commented on another type of

41

jurisdictional defect which can be waived, citing *Harrison v. Leach*, 323 S.W.3d 702 (Ky.2010). It is this comment that the majority relies upon as authority for the proposition that jurisdiction over the case is waivable by the parties when they continue to avail themselves to the litigation. However, the issue on appeal in *Harrison* pertained to standing and the Kentucky court concluded that standing cannot be raised by a reviewing court sua sponte and may be waived. This holding is at odds with Ohio law on standing and does not address the issue framed by the majority—i.e., jurisdiction over the case. Accordingly, the Kentucky cases relied upon by the majority are simply not authority for jurisdiction over the case.

{¶80} In order to preserve the issue on appeal, it was incumbent on the appellant to bring it to the attention of the trial court. Because WBCMT failed to do so, when it had ample opportunity to present a waiver argument, the trial court was not given an opportunity to rule on the issue and it is therefore waived.

## Conclusion

{¶81} In light of the foregoing, I would hold that the trial court in the exercise of its inherent authority appropriately vacated WBCMT's amended complaint after final judgment had been rendered. I would affirm the trial court's judgment.

Please note:
    The court has recorded its own entry this date.